Rule 23 Order filed
 NO. 5-99-0111

June 28, 2000; 

Motion to publish granted
 IN THE

August 29, 2000.

Opinion filed 
 APPELLATE COURT OF ILLINOIS

August 29, 2000.

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE 
ex rel.
 JAMES E. RYAN, )  Appeal from the

Attorney General of the State of Illinois, )  Circuit Court of

)  Montgomery County.  

     Plaintiff-Appellee, ) 

)

v. )  No. 93-CH-32

) 

ROBERT BISHOP, )

)

     Defendant, )

)

and )

)

DEAN BISHOP, )  Honorable

)  John P. Coady, 

     Defendant-Appellant. )  Judge, presiding.  

___________________________________________________________________________

JUSTICE MAAG delivered the opinion of the court:  

This action was brought by the State of Illinois (State), plaintiff-appellee, against defendants-appellants, Robert and Dean Bishop.  The State filed its complaint on November 29, 1993, alleging that certain environmental violations had occurred pursuant to the Illinois Environmental Protection Act (Act) (Ill. Rev. Stat. 1991, ch. 111½, par. 1001 
et seq.
 (now known as 415 ILCS 5/1 
et seq.
 (West 1998))) and the regulations enacted thereto.  Subsequent to a bench trial, the circuit court entered judgments in favor of the State and against defendants on certain violations of the Act and imposed a mandatory obligation to "clean-up" the landfill.  In so holding, the circuit court determined that Dean, together with his father, Robert, were operators of the landfill.  The circuit court ordered a civil penalty of $5,000 per defendant.  This appeal was brought by Dean, who challenges only the finding that he was an operator of the landfill.    

The relevant facts are as follows.  In 1971, Alex Chesney created a landfill on property owned by Robert Bishop.  While Chesney was the operator of the landfill, there were several violations of the Act.  In 1978, Robert began conducting the operations of the landfill.  Robert applied for a supplemental permit, naming himself as the owner and operator of the landfill and naming Dean as an operator also.  Robert signed the application for the supplemental permit.  Dean's signature does not appear on the application.  The Illinois Environmental Protection Agency issued the supplemental permit with Robert as the owner and operator and also listed Dean as an operator.  A review of the record shows that Dean was frequently at the landfill when inspectors were there.  Additionally, the record shows that Dean worked at the landfill.  The inspectors observed him spreading and compacting waste and operating a front-end loader.  Dean also discussed the conditions of the landfill, the ongoing violations, and the efforts to remedy the violations with the inspectors.  Dean also conducted a trash-hauling service.  Dean claimed that he worked at the landfill in exchange for Robert allowing him to dump his roll-off at the landfill.    

Dean and his wife, Mary Ann, pledged a certificate of deposit in the amount of $25,000 as financial assurance for the landfill.  Dean and Mary Ann claimed that they pledged the certificate of deposit as a favor to Robert.  There is no dispute that Dean expended nearly $75,000 over the course of 10 years to maintain the landfill and the equipment.  Dean also hired an engineer to help with the closure/postclosure plan.  There is no dispute that Dean and Mary Ann deducted these amounts from their federal income taxes as expenses and depreciation for the landfill and its equipment from 1987 through 1991 and from 1993 through 1996.  They also listed the landfill as a principal business on their income tax returns.  On the other hand, Robert listed his occupation as a school bus driver and farmer.  Robert did not deduct landfill expenses from 1986 through 1994 and for 1996.

A review of the record shows that Dean was substantially involved in the landfill business.  As we previously stated, Dean did not pay landfill fees when he dumped waste at the landfill.  Dean claimed that he worked at the landfill in exchange for dumping his waste at the landfill.  The record shows that when his father was unavailable, Dean directed people coming into the landfill and that he assisted Robert in remedying some of the violations of the landfill.  The record also shows that in 1992 Dean discovered that he was a named operator of the landfill.    

After hearing all of the evidence, the circuit court determined that Dean was an operator of the landfill.  The circuit court then determined that both Robert and Dean had committed several violations of the Act.  The circuit court ordered Robert and Dean to pay monetary penalties in the amount of $5,000 each.  The circuit court later granted injunctive relief in favor of the State.

Dean appeals and contests only the finding by the circuit court that he is an operator of the landfill in question.

The Pollution Control Board's rules define an operator as "a person who conducts a waste treatment, waste storage[,] or waste disposal operation."  35 Ill. Adm. Code §807.104 (1993).  Dean would have this court believe that he was merely helping his father.  The State contends that Dean was actually an operator of the landfill.  We agree with the State for the following reasons.  

We, as a reviewing court, should not overturn a circuit court's findings merely because we do not agree with the lower court or because we might have reached a different conclusion had we been the fact-finder.  See 
Bazydlo v. Volant
, 164 Ill. 2d 207, 214, 647 N.E.2d 273, 277 (1995).  The trial judge is in a superior position to the reviewing court to observe witnesses while testifying, to judge their credibility, and to determine the weight to be afforded their testimony.  See 
Bazydlo
, 164 Ill. 2d at 214, 647 N.E.2d at 277.  Hence, if the testimony is conflicting in a bench trial, the circuit court's findings will not be disturbed unless they are against the manifest weight of the evidence.  See 
Bazydlo
, 164 Ill. 2d at 214, 647 N.E.2d at 277.  "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence."  See 
Bazydlo
, 164 Ill. 2d at 215, 647 N.E.2d at 277. 

The parties have cited three Pollution Control Board cases to assist this court in determining whether Dean was an operator of the landfill.  One of these cases, 
People v. Prior & Industrial Salvage, Inc.
, Ill. Pollution Control Bd. Op. 93-248 (July 7, 1995) (court determined when no other party is performing operations at landfill, the owner is the operator), is clearly distinguishable.  

In 
Termaat v. Anderson
, Ill. Pollution Control Bd. Op. 85-129 (October 23, 1986), the city and county jointly owned a landfill.  An independent contractor, Anderson, testified that he was an excavating contractor.  Anderson stated that he supplied the equipment, supplies, labor, liability, and personal injury insurance, applied needed cover, controlled litter and vectors, and maintained an unpaved road from the weigh-in scale to the fill area.  Anderson also provided daily and intermediate cover and controlled litter with little or no direct supervision.  Anderson testified that the city's Director of Public Works, who is on-site "every day or twice a week," determined any further lifts, final cover, height for final cover, where to fill, and when and what kind of grass to apply.  The city/county, on the other hand, opened the site each day, maintained the access road to the scale house, employed a person to perform weigh-ins and collect fees (unless otherwise billed directly from the city/county), provided cover and seeding materials, maintained the paved access road from the entrance to the scale house, set rates, and paid all bills.  Anderson noted that he had no lease, that he received no income from the operation independent of his monthly fee, and that he had no interrelationships with the scale master's operations or any other activity concerning the site.  Schroeder, the county board chairman, testified that his committee met monthly to set rates, collect fees, prepare contracts, pay bills, and review conditions at the site.  Schroeder stated that it was the city/county's position that they were "fully responsible" for the landfill.  He also noted that the city/county supplied funds for any landfill operations losses.  In 
Termaat
, the Pollution Control Board determined that the city/county, not Anderson, was the operator of the site.  The Board noted that Anderson was under the supervision of the city's director of public works and that his discretion was limited.

In 
People v. Berger & Berger Waste Management
, Ill. Pollution Control Bd. Op. 94-373 (May 6, 1999), 
appeal filed
, No. 5-99-0386, Berger transferred ownership of the landfill to a corporation that he owned.  Berger retained the landfill permits in his name rather than transferring them to the corporation.  The Pollution Control Board determined that Berger was the "operator" of the landfill because the permits were never transferred to the corporation.  Additionally, Berger was the only person responsible for the operation and maintenance of the landfill, and he had always been in charge of the landfill. 

After reviewing the Pollution Control Board cases, it is clear that whether one is an operator pursuant to the Act depends on the specific facts of the case as a whole.  In the instant case, a review of the record shows that this case is not like the 
Termaat
 case, where one party merely operated the landfill for a monthly fee.  Additionally, this case is distinguishable from the 
Berger
 case, where only one party was responsible for the operation and maintenance of the landfill.  A review of the Pollution Control Board decisions reveals that whether a party's name is listed as an operator in the permit is not the determining factor of whether one is an operator.  Although we do not approve of the fact that Dean never signed the application as an operator, we note that Dean has known since 1992 that he was listed as an operator on the permit, and he has done nothing since that time to disavow his status as an operator of the landfill.  That fact alone, however, is not dispositive of this case.  Dean and his wife pledged a $25,000 certificate of deposit as financial assurance for the landfill.  Dean spent $75,000 over 10 years to maintain the landfill and its equipment.  Dean hired an engineer to assist with closure/postclosure.  Dean deducted these amounts from his federal taxes as expenses and depreciation for the landfill and its equipment.  Dean listed the landfill as a principal business on his income tax returns.  Hence, a review of the record as a whole shows that Dean was much more than someone who exchanged his work at the landfill in order to dump his roll-off into the landfill.  Dean was doing more than merely helping his father, as he would have this court believe.  Dean was, in every sense of the word, an operator of the landfill pursuant to the Act.  

Since we cannot say that an opposite conclusion is apparent or that the finding that Dean was an operator was unreasonable, arbitrary, or not based on evidence, we affirm the circuit court's finding that Dean was an operator of the landfill pursuant to the Act.

Affirmed.  

CHAPMAN and WELCH, JJ., concur.